

FILED

2007 Aug-31  PM 02:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **MARK KING, D.M.D.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | Civil Action Number |
| **GUARDIAN LIFE INSURANCE** | ) | **2:06-cv-0270-UWC** |
| **COMPANY OF AMERICA; UNITED** | ) | |
| **HEALTHCARE INSURANCE** | ) | |
| **COMPANY; and DELTA DENTAL** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | _____ |
| **KEVIN J. ALEXANDER,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **2:06-cv-02061-UWC** |
| **GUARDIAN LIFE INSURANCE** | ) | |
| **COMPANY OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OPINION**

Presently before the Court are motions to dismiss filed by Defendants Guardian

Life Insurance Company of America ("Guardian"), and United Healthcare Insurance

Company ("United").[1]  Also before the Court is a Motion for Judgment on the Pleadings,

filed by Plaintiffs, who bring two separate law suits.  For the reasons set forth below, the

Court finds that the removed action is due to be remanded, and the action that originated

in this Court is due to be dismissed.


## I.  FACTS

The present actions were filed by two Alabama dentists, Mark King and Kevin J.

Alexander.[2]  The three defendants provide health insurance coverage.[3]  According to the

complaints filed by Plaintiffs, Guardian provides coverage for employer group plans,

while both United and Delta provide coverage to both individuals and employer groups.

(King Doc. 102, Fourth Am. Compl.  §§ 4-6; Alexander Doc. 1 § 4.)

In their complaints, Plaintiffs allege that Guardian, United and Delta engage in

payment practices that violate the Alabama Insurance Code.  *See* Ala. Code §§ 27-1-19;

---

[1]  The Court notes that all three remaining defendants, Guardian, United and Delta
Insurance Company ("Delta") initially filed motions to dismiss.  This Court overruled the
motions pending settlement negotiations and gave the parties leave to renew their motions if
settlement did not occur by a specified date.  While Delta never renewed its motion, the issues
raised in Delta's original motion are virtually the same issues raised in the currently pending
motions filed by Guardian and United.

[2]  The Court will refer to King and Alexander collectively as Plaintiffs unless otherwise
necessary for the sake of clarity.

[3]  Alexander only asserts claims against one defendant, Guardian.

27-19A-3.  Specifically, physicians like Plaintiffs, who do not have contracts with the

insurance companies, receive lower payment rates for the same services provided by

physicians that have contracts with the insurance companies.  Additionally, in some

instances, the insurance companies have assigned higher deductibles and co-pays for non-

contract dentists such as Plaintiffs.

Relying solely on the Alabama Code insurance provisions cited above, King

initiated these proceedings by filing, in state court, a complaint that included class

allegations.  Asserting preemption on the basis of the Employee Retirement Income

Security Act ("ERISA"), 29 U.S.C. Section 1001 *et seq.*, one of the defendants timely

removed the King action to this Court.  Ultimately King filed a Motion for Judgment on

the Pleadings with respect to several defenses asserted by Defendants and Defendants, in

turn, filed motions to dismiss asserting "complete" or "super" preemption under ERISA.

During the briefing of these motions, as well as other motions not relevant at this

juncture, this Court granted King's motion to file his Fourth amended complaint.  In the

Fourth Amended complaint, King reasserts claims under Alabama law, but eliminates his

demand for damages.  Additionally, King asserts that "[t]his Court has jurisdiction under

the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), and under Federal

Question Jurisdiction pursuant to 28 U.S.C. § 1331."  (King Doc. 102, Fourth Am.

Compl. ¶ 1.)  No reference is made to any substantive federal statute.

Seeking relief under the same Alabama Insurance Code provisions as did King,

Alexander initiated his lawsuit in the present Court relying on the same jurisdictional language as did King.  (Alexander Compl. ¶ 1.)  Similarly, nowhere in his complaint does he refer to any substantive federal statute.

This Court granted a motion to consolidate the King and Alexander actions.  The pending motions to dismiss were filed in both actions.

## II.  The Alabama Insurance Code

According to Plaintiffs, Defendants have violated two provisions of the Alabama Insurance Code:  Alabama Code § 27-19A-3(1) and Alabama Code § 27-1-19.

Section 27-19A-3(1) prohibits insurance policies and employee benefit plans from interfering with the insured's ability to select the dentist of her choice:

> No health insurance policy or employee benefit plan which is delivered, renewed, issued for delivery, or otherwise contracted for in this state shall:
>
> > (1) Prevent any person who is a party to or beneficiary of any such health insurance policy or employee benefit plan from selecting the dentist of his choice to furnish the dental care services offered by said policy or plan or interfere with said selection provided the dentist is licensed to furnish such dental care services in this state.

Ala. Code § 27-19A-3(1).

The second code provision upon which Plaintiffs rely is Section 27-1-19, which relates to reimbursement of health care providers for services rendered:

> The insured, or health or dental plan beneficiary may assign reimbursement for health or dental care services directly to the provider of services.  Health benefits include medical, pharmacy, podiatric, chiropractic, optometric,

durable medical equipment, and home care services.  The company or agency, when authorized by the insured, or health or dental plan beneficiary,  shall pay directly to the health care provider the amount of the claim, under the same criteria and payment schedule that would have been reimbursed directly to the contract provider, and any applicable interest. This amount only applies to assigned claims.  Any company or agency making a payment to the insured, or health or dental plan beneficiary, after the rights of reimbursement have been assigned to the provider of services, shall be liable to the provider for the payment.  If the company or agency fails to reimburse the provider in accordance with the terms of the provider contract as provided in this section, then the provider shall be entitled to recover in the circuit or district courts of this state from the company or agency responsible for the payment of the claim an amount equal to the value of such claim plus interest and a reasonable attorney's fee to be determined by the court.

Alabama Code § 27-1-19 (emphasis added).

For the alleged violation of these provision, Plaintiffs seek equitable relief in the form of an injunction, a declaration, and reformation of the contracts.

## II. ERISA

Defendants contend that Plaintiffs' state law claims are completely preempted by ERISA.  This "complete preemption [or super-preemption] exists only when the plaintiff is seeking relief that is available under ERISA Section 502(a)."  *Cotton v. Massachusetts Mut. Life Ins. Co.*, 402 F.3d 1267, 1281 (11th Cir. 2005) (citing 29 U.S.C. § 1132(a); *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1212 (11th Cir. 1999) (internal quotations omitted).  Section 502(a) provides that a civil action may be brought, *inter alia*,

(1) by a participant or beneficiary . . . .

> (B) <u>to recover benefits due to him under the terms of his plan</u>, to <u>enforce his rights under the terms of the plan</u>, or to clarify his rights to future benefits under the terms of the plan. . . .

(3) by a participant, beneficiary, or fiduciary

> (A) to <u>enjoin any act or practice which violates any provision of this title or the terms of the plan</u>, or

> (B) to obtain other appropriate equitable relief (I) redress such violations or (ii) to enforce any provisions of this title or the terms of the plan;   . . . .

29 U.S.C. § 1132(a)(1)(B)**;** 1132(a)(3) (emphasis added)**.**

When a Plaintiff asserts state law claims that essentially seek the same type of relief that is available under ERISA Section 502(a), the state law claims are "completely preempted." *Cotton*, 402 F.3d at 1281.  In other words, the state law claims are recharacterized as ERISA claims and a Plaintiff may proceed to the extent ERISA provides the relief sought.  Moreover, the recharacterized claims provide the basis for federal jurisdiction when the following four elements are satisfied:

> First there must be a relevant ERISA plan.  Second, the plaintiff must have standing to sue under the plan.  Third, the defendant must be an ERISA entity.  Finally, the complaint must seek compensatory relief akin to that available under § 502(a); often this will be a claim for benefits due under the plan.

*Cotton*, 402 F.3d at 1281 (citing *Butero*, 174 F.3d at 1212).

In the present case, the first three elements are clearly met.  In the complaint, Plaintiffs admit that the Defendants provide coverage to employer groups and there is

nothing in the record to indicate that these group plans are anything other than relevant

ERISA plans.[4]  Second, as assignees of the benefits due to the insured patients, Plaintiffs

have standing to sue.  *See Cagle v. Bruner*, 112 F.3d 1510, 1514-15 (11th Cir. 1997)

(finding "derivative standing based upon an assignment of rights" in ERISA cases).  With

respect to the third element, there is no question that defendants are ERISA entities.  *See*

*Cotton*, 402 F.3d at 1282 (noting that an insurer is a fiduciary and, therefore, an ERISA

entity).

     For purposes of the instant case, the key to the complete preemption question is

whether Plaintiffs "seek compensatory relief akin to that available under § 502(a) . . . ."

*See Cotton*, 402 F.3d at 1281 (citing *Butero*, 174 F.3d at 1212).  Defendants contend that

Plaintiffs' claims are essentially claims for benefits pursuant to Section 502(a).  In

support of their argument, Defendants primarily rely on *Aetna Health Incorporated v.*

*Davila*, 542 U.S. 200, 208-9 (2004).  The Plaintiffs in *Davila* sued their HMOs after

Plaintiffs' claims for benefit coverage were denied.  In their complaints, Plaintiffs alleged

that the denial of benefits violated a state health care liability act that "imposed a duty on

managed care entities to 'exercise ordinary care when making health care treatment

decisions.'"  *Davila*, 542 U.S. at 212.  Finding that Plaintiffs' claims were preempted, the

United States Supreme Court first noted:

---

     [4]  According to the King complaint, United and Delta also sell policies directly to
individuals.  This fact does not materially impact the Court's analysis, however.

Congress enacted ERISA to "protect the interests of participants in employee benefit plans and their beneficiaries" by setting out substantive regulatory requirements for employee benefit plans and to "provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans. To this end, ERISA includes expansive pre-emption provisions . . . which are intended to ensure that employee benefit plan regulation would be "exclusively a federal concern."

. . . .

Therefore, any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted.

*Davila*, 542 U.S. at 208-9 (citations omitted). Keeping these principles in mind, the

Court found that the Plaintiffs' claims were preempted because:

It is clear, then, that respondents complain only about denials of coverage promised under the terms of ERISA-regulated employee benefit plans.

. . . .

Thus, interpretation of the terms of respondents' benefit plans forms an essential part of their [state law] claim . . . . Petitioners' potential liability . . . derives entirely from the particular rights and obligations established by the benefit plans . . . not entirely independent of the federally regulated contract itself.

. . . .

[Plaintiffs] do not attempt to remedy any violation of a legal duty independent of ERISA."

*Davila*, 542 U.S. at 211, 213, 214 (citations omitted).

Unlike *Davila*, Plaintiffs in the instant litigation are not attempting to seek

remedies that duplicate or supplant those remedies available under ERISA.  In other words, Plaintiffs do not contend they were wrongly denied reimbursement based upon the terms of any ERISA agreements.  As such, Plaintiffs' quarrel is not with Defendants in their role as ERISA entities.  Rather, Plaintiffs contend that Defendants, as insurance companies, had an obligation to include equal reimbursement schedules in the contracts they negotiated with both employers and individuals.  This obligation arises from a state law, independent of any rights or obligations associated with ERISA.  Because Plaintiffs' claims derive from a duty independent of the ERISA enforcement mechanism, their claims do not conflict with the goals behind enactment of ERISA.  Accordingly, Plaintiffs' claims are not completely preempted.

Inasmuch as "complete" preemption provides federal jurisdiction and there is no "complete" preemption here, some independent basis for federal jurisdiction must exist before this Court can reach the remaining issues raised by the parties.[5]

---

[5]  Plaintiffs never address the ERISA Section 502(a) "complete" preemption argument. *See* 29 U.S.C. § 1132(a)(1)(B).  Instead, they rely on ERISA's "savings clause" to rescue their claims from preemption.

Any discussion of the "savings clause" is premature, however, in cases such as this where jurisdiction is at issue.  The "savings clause" analysis only comes into play when analyzing "defensive" preemption under Section 514(a) of ERISA.  *See* 29 U.S.C. § 1144(a).  Unlike "complete" preemption, which is jurisdictional, "defensive" preemption is substantive. Therefore, if no complete preemption exists and no other basis for federal jurisdiction exists, a federal district court is without jurisdiction to reach the substantive defensive preemption issue. Without jurisdiction, Plaintiffs' claims must be remanded or dismissed.  Once in state court, Defendants may assert "defensive preemption," as substantive defense.  As the Eleventh Circuit has pointed out "a state-law claim may be defensively preempted under [ERISA] § 514(a) but not completely preempted under [ERISA] § 502(a).  *Cotton*, 402 F.3d at 1281, 1289.

### III. The Class Action Fairness Act

Apparently, King has decided that he would rather remain in federal court because he amended his complaint to assert that the present "Court has jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), and under Federal Question Jurisdiction pursuant to 28 U.S.C. § 1331."  (King Compl. ¶ 1.)  Alexander makes the same assertions in his complaint.  (Alexander Compl. ¶ 1.)

Although both complaints refer to some unidentified "Federal Question Jurisdiction pursuant to 28 U.S.C. § 1331," neither complaint includes references to any other federal statute except the Class Action Fairness Act ("CAFA").  Accordingly, the Court is left to decide whether Plaintiffs' meet the CAFA jurisdictional requirements.

> Congress enacted CAFA to address inequitable state court treatment of class actions and to put an end to certain abusive practices by plaintiffs' class counsel. CAFA § 2, 119 Stat. at 5. CAFA seeks to address these inequities and abusive practices by, among other things, broadening federal diversity jurisdiction over class actions with interstate implications. CAFA § 2, 119 Stat. at 5; . . .

> CAFA amends the federal diversity jurisdiction statute, 28 U.S.C. § 1332, by inserting a new subsection, § 1332(d). This new subsection works a sea change in diversity jurisdiction for certain class actions. It broadens diversity jurisdiction by establishing lower threshold requirements for jurisdiction and abrogating long-established precedent. [6] Subject to certain

---

[6] "Following the enactment of CAFA, federal courts no longer look to the familiar requirements of 28 U.S.C. § 1332(a) to determine if the court has diversity jurisdiction over certain class actions.  Instead, federal courts now look to § 1332(d)(2)." *Lowery*, 483 F.3d at 1193 n.24.

exceptions designed to keep purely local matters and issues of particular state concern in the state courts, § 1332(d)(3) to (5), <u>CAFA provides federal courts with jurisdiction over class actions provided that: the number of plaintiffs in all proposed plaintiff classes exceeds one hundred</u>, § 1332(d)(5)(b); <u>any member of the plaintiff class is diverse from any defendant</u>, § 1332(d)(2); and <u>the aggregate of the claims of individual class members exceeds $5,000,000, exclusive of interests and costs</u>.

*Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1193-94 (11th Cir. 2007) (citing 28

U.S.C. § 1332(d)(2), (6)) (some citations omitted) (emphasis added).

"Consistent with the limited nature of federal jurisdiction, the party seeking a federal venue must establish the venue's jurisdictional requirements." *Lowery*, 483 F.3d at 1207 (citation omitted).  In the present action, Plaintiffs rely on CAFA to support federal jurisdiction.  Therefore, Plaintiffs must establish that the jurisdictional requirements are met.

Federal Rule of Civil Procedure "8(a) requires the plaintiff to set forth in the complaint the factual support for jurisdiction." *Lowery*, 483 F.3d at 11216 ("A pleading which sets forth a claim for relief . . . shall contain  . . . a short and plain statement of the grounds upon which the court's jurisdiction depends . . . .").

In the instant case, Plaintiffs assert federal jurisdiction pursuant to CAFA, but spell out no other facts which might establish the "grounds upon which the court's jurisdiction depends," as required by Rule 8(a).  The only facts that might be relevant to the jurisdictional issue are found in the body of the complaint where Plaintiffs spell out the

proposed class definition:

> All dentists in Alabama who have treated persons insured by one of the Defendants' dental plans during the period of six (6) years prior to the commencement of this civil action that do not have a contract with Defendants.[7]

(King Doc. 102, Fourth Am. Compl. ¶ 15; Alexander Compl. ¶ 14.)  Plaintiffs also assert that the number of proposed class members is so numerous that individual joinder of all members is impracticable and inefficient, but Plaintiffs "do not know the exact number of class members . . . ."  (King Doc. 102, Fourth Am. Compl. ¶ 16; Alexander Compl. ¶ 15.)

Given this information, it appears that only two of the CAFA jurisdictional requirements are potentially satisfied.  First, it appears that the number of class members would exceed 100.  Second, it <u>appears</u> that at least one plaintiff is diverse from at least one defendant.  However, the complaint does not provide sufficient information for the Court to ascertain whether CAFA diversity actually exists.  While Plaintiffs provide the principal place of business for each defendant, Plaintiffs do not provide the state in which each defendant was incorporated.  Because a corporation is a citizen of both places for diversity purposes, it is not possible for this Court to determine with certainty the citizenship of the defendant insurance companies.  *See* 28 U.S.C. § 1332(c)(1).

Even assuming that the diversity of citizenship requirement is satisfied, the Court

---

[7] Presumably, this six year period is no longer relevant given the change from a demand for damages to a demand for equitable relief.

Page 12 of  15

finds that the Plaintiffs have not plead sufficient facts from which to established that their claims satisfy the amount in controversy requirement.  Pursuant to CAFA, the aggregate claims of individual class members must exceed $5,000,000, exclusive of interests and costs.  *Lowery*, 483 F.3d at 1194; *see* 29 U.S.C. § 1332(d)(2).  While Plaintiffs do not specifically allege that their claims exceed $5,000,000, presumably Plaintiffs' reliance on CAFA, as a basis for jurisdiction, supports the conclusion that they believe their claims exceed the jurisdictional amount.

The problem, however, is that the value of the claims is too uncertain.  In the instant litigation Plaintiffs seek solely equitable remedies, in the form of an injunction, declaration and reformation of the contracts.

> When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective.  In other words, the value of the requested injunctive relief is the monetary value of the benefit that would flow to the plaintiff if the injunction were granted.

*Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir. 2000) (citation omitted).  Here, the value that would flow to the Plaintiffs is "'too speculative and immeasurable' to establish the requisite amount in controversy . . . ."  *Cohen*, 205 F.3d 1077 (citation omitted).  To determine the value that would flow to Plaintiffs from reformation of the reimbursement provisions in their contracts, one must know the approximate number of out-of-network dentists.  Even if one assumes that the class is composed of thousands of out-of-network dentists, in order for this Court to determine the value of reformation to

Plaintiffs, the Court would have to assume that the availability of increased reimbursement for dental care would lure significant numbers of new patients to out-of-network dentists.  Without an exodus of patients from the in-network dentists to the out-of-network dentists, reformation has little value to Plaintiffs — except to the extent Plaintiffs attract newly insured patients.  Even then, there is no guarantee that the newly insured will seek treatment from out-of-network dentists in droves.  While one can easily imagine the reformed contract value flowing to Plaintiffs reaching millions of dollars, there is too much uncertainty that the value actually exceeds $5,000,000.

Another wrinkle in this already complex and speculative jurisdictional amount analysis is the impact that severing the claims against the King defendants might have on the value to the Plaintiffs of any anticipated equitable relief.  On November 2, 2006, this Court issued an order informing the parties that he intended to grant United and Dental's motions to sever.  (King Doc. 100, ¶ 4.)  Severance of Kings' claims against United and Delta makes establishing jurisdiction even more difficult and speculative because the potential value to Plaintiffs is no longer aggregated among three insurance companies.

As the Eleventh Circuit Court of Appeals has recognized, a court should refrain from "pil[ing] possibility onto possibility to estimate the value" that would flow to Plaintiffs seeking equitable relief.  *See Cohen*, 205 F.3d at 1078-79 (citation omitted).  Accordingly, the instant Court concludes that Plaintiffs have not established that federal

jurisdiction exists over their claims. [8]

By separate order, King's claims will be remanded and Alexander's claims will be dismissed without prejudice.

Done this 31st day of August, 2007.

_____
U.W. Clemon
United States District Judge

_____

[8] Even if this Court had jurisdiction to consider Plaintiff's claims, this Court is of the opinion that a private civil action is not possible to enforce the provisions of Alabama Code § 27-19A-3, which prohibits activities that limit a patient's choice of dental care provider.  This provision solely provides for criminal penalties and enforcement by the Insurance Commissioner. *See* Ala. Code §§ 27-19A-10; 27-1-12;  *American Auto. Ass'n Co. v. McDonald*, 812 So. 2d 309, 311-12 (Ala. 2001) ("[o]ne claiming a private right of action within a statutory scheme must show clear evidence of a legislative intent to impose civil liability for a violation of the statute.").

Additionally, this Court is of the opinion that the reimbursement provision, Alabama Code § 27-1-19, is problematic for Plaintiffs because it solely provides for relief in the form of compensatory damages.  However, Plaintiffs here seek purely equitable remedies, which are not available when there is an adequate remedy at law.

Page 15 of  15